UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,                    Case No. 10-20746

        Plaintiff,                         Honorable Sean F. Cox
                                           United States District Judge
v.

Michael Warner,

        Defendant.
_____/

OPINION & ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE

Defendant Michael Warner ("Defendant" or "Warner") was indicted by a grand jury on December 9, 2010. Defendant is charged with one count of being a felon in possession of a firearm following three serious felony offense convictions, a violation of 18 U.S.C. § 922(g) and §924(e). Currently before the Court is Defendant's motion to suppress the firearm to which the Defendant was found to be in possession. Defendant contends that the arresting officer did not have reasonable suspicion to conduct a *Terry* stop and that the officer's search of Defendant's person violated his Fourth Amendment rights. The parties have briefed the issues and the Court held an evidentiary hearing on July 6, 2011, which was resumed and concluded on July 8, 2011. For the reasons set forth below, the Court shall DENY Defendant's motion to suppress.

DISCUSSION

The defendant has the burden of showing that his constitutional or statutory rights have been violated, making suppression necessary. *United State v. Rodriguez-Suazo*, 346 F.3d 637,

643 (6th Cir. 2003). The Fourth Amendment permits an officer to make a brief investigatory stop of an individual if the officer bases his action on a "reasonable suspicion" that criminal activity may be occurring. *See United States v. Arvizu*, 534 U.S. 266 (2002); *Terry v. Ohio*, 392 U.S. 1 (1968).

This type of stop by law enforcement is known as a *Terry* stop. The "level of suspicion required for a *Terry* stop is. . . less demanding than that for probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1990). In executing a *Terry* stop, police officers may conduct "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry*, 392 U.S. at 27. Courts must look "at the totality of the circumstances" in each case to determine whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273. The court "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *Id*.

EVIDENTIARY HEARING

Warner filed his motion to suppress and his motion for an evidentiary hearing on April 20, 2011. (Def. Br., Doc. No. 19). The Government filed a response to Warner's motion on May 19, 2011. (Gov. Br., Doc. No. 23). The Court held the July 6th and July 8th evidentiary hearing in order to determine whether Officer Strickland had reasonable suspicion to execute a *Terry* stop on Warner.

The Government called Officer Johnny Strickland, the arresting officer, as its sole

witness at the hearing. The Government also presented the June 21, 2011 affidavit of Thomas Coulter as an exhibit.

Warner called the following witnesses at the hearing: 1) Thomas Coulter, who is the security guard at the AutoZone store at which the incident took place and friend of Warner; and 2) Tonya Sampson, Warner's sister, who drove Warner to the AutoZone and was present at the scene of the arrest. Warner also presented a photo of the layout of the AutoZone store and parking lot as an exhibit.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having heard and observed the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the exhibits submitted by the parties, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

On the evening of November 9, 2009, at around 6:50 P.M., Officers Johnny Strickland and Edward Jackson of the Detroit Police Department were dressed in plain clothes and patrolling in a semi-marked Crown-Victoria, a vehicle that is commonly known as a police vehicle. Officer Edwards was driving the vehicle and Officer Strickland was seated in the front, passenger seat.

The officers were patrolling the area near the crossroads of Plymouth and Memorial,

---

[1] To the extent that a finding of fact is more properly a conclusion of law, and the to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

which is a high-crime area with known gang activity. As the officers were driving westbound on Plymouth, Officer Strickland observed a disorderly crowd in the parking lot of the AutoZone store on the corner of Plymouth and Memorial. The crowd in front of the store consisted of at least four people. The group was standing about ten feet from the entrance of the AutoZone and the participants were yelling at each other and using profanity.

The officers made a u-turn on Plymouth and began approaching the AutoZone in order to investigate the disturbance. As the officers drove by, Officer Strickland observed Warner yelling at another individual. When the officers first made the u-turn, Warner was still within the crowd. As the officers approached, Warner looked in the direction of the squad car began to slowly walked away from the crowd. As the officers drove closer to the store, Officer Strickland observed Warner place his hand in his right pocket and walk with a faster pace toward the front door of the store.

Additionally, Officer Strickland noticed Warner was "pretty nervous" and "frantic." The officers then pulled in to the parking lot of the store just as Warner was entering the AutoZone. Officer Strickland exited the squad car and followed Warner into the store.

Upon entering the store, Officer Strickland observed Warner looking back toward the entrance and walking toward one of the isles. Officer Strickland ordered Warner to put his hands in the air. As Warner raised his hands in the air, he blurted, "That bitch put the gun in my pocket." Following Warner's statement, Officer Strickland frisked Warner for weapons, felt a gun in his pocket, detained Warner, and escorted him out of the store. Once outside of the store, Officer Strickland handcuffed Warner, reached into Warner's pocket, and recovered a loaded

handgun.

After Officer Strickland arrested Warner, a group of uniformed police officers arrived at the scene because they received a "police run" regarding the disturbance in front of the AutoZone. The uniformed officers remained at the scene after Officers Strickland and Edwards left.

## CONCLUSIONS OF LAW

In his motion, Warner contends that the arresting officers did not have reasonable suspicion to initiate a *Terry* stop and that Officer Strickland's search of Warner constituted a violation of his Fourth Amendment rights. As a result, Warner asserts that the firearm recovered by the officers should be suppressed. (Def. Br. at 6).

**I. There Was Reasonable Suspicion Based Upon The Violation Of A City Ordinance.**

In response, the Government contends that the disturbance that brought Warner to the officers' attention was sufficient to create reasonable suspicion. The Government claims that the disturbance was a violation of the City of Detroit's Disorderly Conduct Ordinance § 38-5-1, and because there was an ongoing misdemeanor violation, the officers had justification to stop Warner. Section 38-5-1 provides, "Any person who shall make or assist in making any noise, disturbance or improper diversion or any rout or riot, by which the peace and good order of the neighborhood is disturbed . . . shall be guilty of disorderly conduct." Detroit, Michigan, Code of Ordinances, Part III, §38-5-1 (2010). A violation of § 38-5-1 can result in a citation and is an arrestable offense.

The Sixth Circuit has previously held that a violation of a city ordinance is sufficient to

create a reasonable suspicion necessary to conduct a *Terry* Stop.  *See United States v. Thomas*, 381 Fed. Appx. 495 (6th Cir. 2010) (officer had reasonable suspicion to conduct *Terry* stop on driver when driver was suspected of violating noise violation); *United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2006) (defendant was pulled over because his temporary license plate was unreadable; held reasonable suspicion of an ongoing misdemeanor is adequate justification to stop).

In this case, the confrontation between Warner and the other individuals was a disturbance of the peace.  The parties to the disturbance were yelling at each other and using profane language.  The crowd's conduct was a violation of the city's disorderly conduct ordinance and Officer Strickland attempted to approach warner to "advise him of the disorderly conduct." (Gov. Br., Ex. 2).  Because Officer Strickland determined that Warner was in violation of a city ordinance, the Court finds that there was reasonable suspicion for the officers to conduct a *Terry* stop on Warner.

## II.     The Officers Had Reasonable Suspicion Based Upon The Totality Of The Circumstances.

Beyond the assertion that the violation of the ordinance is sufficient to establish reasonable suspicion, the Government also contends that, based upon the totality of circumstances in this case, Officer Strickland had reasonable suspicion to execute a *Terry* Stop.  The Court agrees.

The Government relies on several relevant factors which courts have previously found to be appropriate for consideration when determining whether reasonable suspicion exists to

conduct a *Terry* stop. The officers observed Warner engaging in disorderly conduct in what Officer Strickland described as a "high crime" area. *Illinois v. Wardlow*, 528 U.S. 119, 124 (quoting *Adams v. Williams*, 407 U.S. 143, 144 (1972)) ("the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a *Terry* analysis"). Additionally, Officer Strickland observed Warner act nervously and evasively upon noticing the officers approaching in their squad car. *See Illinois v. Wardlow*, 528 U.S at 120 (2000) (finding that officers had reasonable suspicion to conduct a *Terry* stop after observing defendant evasively turn and walk away from officers, as well as appear to conceal something in his hand). Officer Strickland also observed that Warner appeared to be holding or concealing an item in his pocket as he entered the store. Officer Strickland stated, "[B]ased on my knowledge and past experience, individuals who normally display those type of actions are normally armed with some type of weapon or some type of narcotic or contraband, they're either trying to get rid of it or trying to conceal it." *See Campbell*, 549 F.3d at 371) (finding that reasonable suspicion can be based on objective observations of an officer in conjunction with the officer's experience and knowledge). Furthermore, upon pursuit, both before and after Warner entered the store, Warner tried try to avoid contact with the officers. *See United States v. Caruthers*, 458 F.3d 459, 466 (6th Cir. 2006) (finding that "flight is not the only type of 'nervous, evasive behavior,' [f]urtive movements made in response to a police presence may also properly contribute to an officer's suspicions"). Finally, when Officer Strickland told Warner to put his hands in the air, Warner blurted that he had a gun in his pocket.

Considering the totality of the circumstances, the Court find that factors discussed above

were sufficient to evoke a reasonable suspicion that Warner was engaged in criminal activity. Officer Strickland was justified in executing a *Terry* stop on Warner and the search was not a violation of Warner's Fourth Amendment rights.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motion to suppress evidence.

**IT IS SO ORDERED.**

                                                S/Sean F. Cox
                                                Sean F. Cox
                                                United States District Judge

Dated: July 22, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 22, 2011, by electronic and/or ordinary mail.

                                                S/Jennifer Hernandez
                                                Case Manager